This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Antonio Ramos, appeals from a criminal conviction and sentencing resulting from a jury trial in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On February 25, 2003, a Summit County Grand Jury indicted Appellant on two counts of rape in violation of R.C. 2907.02(A)(1), a first degree felony, and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third degree felony, allegedly committed between June, 1997, and March, 2001 against his juvenile step-daughter, E.K. E.K. was five years old when the alleged molestation began. On April, 29, 2002, the Grand Jury supplemented the indictment with two counts of gross sexual imposition, also in violation of R.C.2907.05(A)(4), allegedly occurring within the same time frame as the original indictment, but committed against E.K.'s younger sister, L.K. The case was tried before a jury, with the jury returning guilty verdicts on all counts. Appellant timely appealed, raising five assignments of error.
 II. Assignment of Error No. 1 {¶ 3} "The Trial court erroneously admitted prejudicial and improper testimony regarding the defendant's `other acts' over the objection of defendant."
 {¶ 4} In the first assignment of error, Appellant asserts that the testimony of A.S., a friend of E.K., amounted to impermissible testimony regarding "other acts" in violation of Evid.R. 404(B).
 {¶ 5} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
 {¶ 6} "A trial court enjoys broad discretion in admitting evidence. [An appellate] court will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." State v. Long (1978),53 Ohio St.2d 91, 98. "`[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 7} Evidence of prior criminal acts, which are wholly independent of the crime for which a defendant is on trial, is generally inadmissible. State v. Watkins, 9th Dist. No. 02CA008087, citing State v. Thompson (1981), 66 Ohio St.2d 496, 497; see, also, R.C. 2945.59. Failure to raise an issue at the trial court level usually precludes this Court from reviewing the issue. State v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987 ¶ 7. A failure to object waives all but plain error. See State v. Coley (2001),93 Ohio St.3d 253, 266.
 {¶ 8} A.S.'s testimony was that on a particular day she was present in E.K.'s bedroom with E.K., L.K., their brother, and Appellant. A.S. stated that Appellant was lying on his back on the floor while L.K. and the brother were bouncing on Appellant's stomach. According to A.S., E.K. urged A.S. to allow Appellant to give A.S. a "horsey ride," which was accomplished by having A.S. straddle Appellant and bounce up and down on his groin area. A.S. testified that doing so made her feel sad because she knew the behavior was wrong. A.S. further testified that later in the day, while the parties were in the living room, she witnessed Appellant pull E.K. over to the couch and pull down E.K.'s pants and underwear, and then laugh as E.K. pulled them back up.
 {¶ 9} Appellant states on appeal that the "horsey ride" testimony was impermissible evidence of other acts offered to prove character and conformity with character. A review of the record indicates that Appellant raised no objection to the "horsey ride" testimony or to the testimony that Appellant pulled down E.K.'s pants. Objections were raised only when A.S. was questioned regarding how the "horsey ride" made her feel. Her testimony about her feelings does not constitute other acts testimony and has no bearing upon the factual issues regarding the acts of Appellant. Because Appellant did not object to the admission of testimony to the fact that the "horsey ride" occurred, he cannot now claim that the admission of testimony regarding the act was error.
 {¶ 10} Appellant's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 11} "The Trial Court erroneously admitted prejudicial and improper testimony regarding the defendant's previous misdemeanor conviction, over the objection of defendant."
 {¶ 12} In the second assignment of error, Appellant claims that, although his prior misdemeanor conviction was admissible to challenge his credibility, the trial court allowed impermissible probing into the underlying incident resulting in the charge.
 {¶ 13} In Appellant's brief, Appellant quotes the following discourse from his testimony and raises it as error:
 {¶ 14} "Q: [from the prosecutor] You don't recall pleading guilty to burning your son's hand?
 {¶ 15} "Ms. Powers: Objection.
 {¶ 16} "The Court: Overruled.
 {¶ 17} "A: Okay. See, I did. (Defendant speaking Spanish.)
 {¶ 18} "Interpreter Framer: But I wasn't incarcerated, and that's what I'm talking about.
 {¶ 19} "Q: So you have been convicted?
 {¶ 20} "A: Well, if that's what it implies, yes. But I am talking about being in prison for a while (sic) like I am now. Maybe it's the way it's interpreted. I understand the issue.
 {¶ 21} "Q: Do you recall that incident?
 {¶ 22} "A: Yes.
 {¶ 23} "Q: And that incident was less than two years ago; is that correct?
 {¶ 24} "A: Yes. It was around that time, because the house had burned and they were accusing my boy, and they also said it was caused by the electric, but because the house had just burned and the boy was playing with matches, I grabbed his — he plugged something in and some smoke came out. And the house that we had moved to, and so —
 {¶ 25} "Ms. Powers: Your Honor, I object. Please, may we have a side bar? Please.
 {¶ 26} "The Court: Overruled, counsel. The answer will stand.
 {¶ 27} "Q: So you put his hands on the kerosene heater to burn him?"
 {¶ 28} In the brief, Appellant ends the quote with the above question and argues that the court erred in allowing "the Prosecutor to pry into the facts underlying the prior conviction beyond the time and place of the crime and the punishment imposed[.]" We note that Appellant concedes that the admission of the prior conviction was permissible in that Appellant testified he had no previous criminal convictions. We also note that the testimony of Appellant regarding the burning house was information volunteered by Appellant and was not solicited by the question preceding it asking how long ago the conviction occurred.
 {¶ 29} Upon review of the transcript, we find that immediately after the question, "So you put his hands on the kerosene heater to burn him," the defense counsel said, "Your Honor, I need to renew my objection. One cannot go into the facts of a prior conviction, just that it's a conviction." The court responded, "The Court will sustain the objection." Having the objection sustained, Appellant cannot show error on appeal and, therefore, the second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 30} "The trial court committed prejudicial error in imposing consecutive and maximum sentences on defendant in contravention to R.C.2929.14."
 {¶ 31} In this assignment of error, Appellant claims that the trial court did not make the requisite findings on the record pursuant to R.C. 2929.14 to allow the imposition of consecutive and maximum sentences. We disagree.
 {¶ 32} A conviction under R.C. 2907.02(A)(1)(b) carries a mandatory life sentence when the victim is under ten years of age. R.C.2907.02(B).
 {¶ 33} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 34} "* * *
 {¶ 35} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 36} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).
 {¶ 37} A trial court is required to make findings and give reasons to support the imposition of consecutive sentences in the record of the sentencing hearing. State v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 3.
 {¶ 38} At the sentencing hearing, the trial court imposed two mandatory life sentences to run consecutively, stating:
 {¶ 39} "that consecutive sentences are necessary for the protection of the public and consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public. Court finds that no single prison term would be adequate for either of the offenses was committed — which were not committed as a single course of conduct, but which were committed over a considerable period of time and is against two separate victims. (Sic.) Court finds that the failure of the defendant to acknowledge or accept responsibility for the conduct further is an indicia of the danger posed to the public and that anything less than consecutive sentences would not only demean the seriousness of the offense but would put at risk other children."
 {¶ 40} In the journal entry, the trial court found:
 {¶ 41} "(1) anything less would demean the seriousness of the offenses;
 {¶ 42} "(2) repeated acts;
 {¶ 43} "(3) no remorse;
 {¶ 44} "(4) relationship with victims facilitated offense;
 {¶ 45} "(5) prison term needed to protect the public;
 {¶ 46} "(6) two separate victims;
 {¶ 47} "(7) sex offenses;
 {¶ 48} "(8) physical and/or psychological harm to the victims;
 {¶ 49} "(9) not amenable to community control;
 {¶ 50} "(10) recidivism likely; [and]
 {¶ 51} "(11) justice requires a prison term[.]"
 {¶ 52} Based on the foregoing, this Court concludes that the trial court provided the necessary findings and reasons in the sentencing record for imposing consecutive sentences. Appellant's third assignment of error is overruled.
 Assignment of Error No. 4 {¶ 53} "Defendant's trial attorney's failure to employ an expert witness to refute the state's expert witness was ineffective assistance of legal counsel[.]"
 {¶ 54} In his fourth assignment of error, Appellant argues that his trial attorney should have engaged the services of an expert to counter the testimony of Donna Abbott, who stated that although there were no physical indicators of sexual penetration, the absence of indicators was not conclusive evidence that no penetration occurred, especially given the rapid healing rate of the tissue involved. Appellant maintains that the failure to secure an expert constitutes ineffective assistance of counsel. We disagree.
 {¶ 55} In order to show ineffective assistance of counsel, it must be shown that: (1) council's performance was deficient to the point that representation was not adequate to meet Sixth Amendment guarantees, and (2) "the deficient performance prejudiced the defense." Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. State v. Loza (1994), 71 Ohio St.3d 61, 83. Accordingly, we will begin our analysis with a discussion of the prejudice prong of Strickland.
 {¶ 56} "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. There are numerous ways to provide effective assistance of counsel, and debatable trial tactics and strategies do not constitute a denial of that assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 49. A defendant must demonstrate that defense counsel's trial tactics prejudiced him, not merely speculate that trial counsel's allegedly deficient performance prejudiced the defense. See State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 57} Appellant's counsel thoroughly cross-examined Abbott regarding the lack of evidence attainable by physical examination of the victims, which evidence, if present, would tend to prove the allegations of rape and gross sexual imposition. Nonetheless, Appellant maintains that Abbott's testimony was highly prejudicial and required expert contradictory opinion. Appellant does not indicate what the expert's testimony would be other than to "contradict this expert as her opinion and reports [were] extremely questionable." Appellant's argument is based entirely upon speculation that such a witness exists, and speculation as to what the testimony of such a witness would be. Therefore, Appellant's claim fails the second prong of the Strickland test. Appellant's fourth assignment of error is without merit and is overruled.
 Assignment of Error No. 5 {¶ 58} "The two rape convictions were against the manifest weight of the evidence."
 {¶ 59} As an initial matter, this Court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 60} In reviewing whether a conviction is against the manifest weight of the evidence, this court must:
 {¶ 61} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 62} R.C. 2907.02 states in pertinent part:
 {¶ 63} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 64} "* * *
 {¶ 65} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 66} "* * *
 {¶ 67} "(B) Whoever violates this section is guilty of rape, a felony of the first degree."
 {¶ 68} R.C. 2907.01(A) defines "sexual conduct" as:
 {¶ 69} "[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 70} E.K. testified that Appellant touched her "private part and [her] butt" with "[h]is hand and his private part." She testified that when she attempted to get away from him, Appellant would prevent her from moving. She further testified that Appellant penetrated her both digitally and with his penis. She testified that penile penetration occurred twice, and digital penetration occurred four times. Further, she testified that Appellant ejaculated "[g]reen, slimy stuff." Afterward, according to E.K., Appellant threatened to hurt her, her mother, and her sister if she told anyone. E.K. also testified that she witnessed Appellant committing the same acts upon her sister. During the course of the investigation of this case, E.K. was asked to render a drawing of an event she would like to eradicate from her life. The drawing was produced in court, and E.K. testified that the drawing was of Appellant touching her and her sister while they were in bed.
 {¶ 71} E.K.'s sister, L.K., likewise testified that Appellant touched her "privates" with his hand while she was in bed. L.K. also stated that she observed Appellant touch A.S., and that Appellant touched E.K., as well. L.K. identified a picture she drew as Appellant touching her and "about to lay on us." She stated that she was afraid of Appellant when the touching occurred, because she would attempt to get away, and he would twist her arm so that she could not.
 {¶ 72} Kerri Marshall, a social worker, testified that she interviewed both E.K. and L.K. regarding the events alleged in this case. Marshall stated that during her interview, E.K. alleged that Appellant began his sexual abuse when E.K. was five years old, that Appellant would hold her on his lap when he inappropriately touched her, that sometimes her clothes were on and sometimes off, that Appellant's pants and underpants would be off, and that Appellant threatened to throw her against a wall if she told anyone. Further, E.K. stated to Marshall that sometimes she would be in her bedroom or in the living room when the touching occurred. E.K. confirmed to Marshall that Appellant penetrated her and that Appellant ejaculated "[g]reen or white stuff" which was "[s]limy." Marshall further testified that E.K. claimed that the penetration was painful, and that she witnessed Appellant inappropriately touch her sister. Marshall stated that E.K. described Appellant's "private" to Marshall as "like a stick, but big and fat. It has three lines and a dot in the middle, hairs on it[.]"
{¶ 73} Marshall also interviewed L.K., who, according to Marshall's testimony, confirmed that L.K. was sexually abused by Appellant while she was in bed, and that he twisted her hand when she tried to push him away. Marshall stated that L.K. said her sister and her brother were witness to her molestation. Marshall further testified that L.K. claimed the touching would occur for "[t]wo days and then wait for three days, and then it would start again."
 {¶ 74} Louisa Foss, a counselor at the Child Guidance Center, testified that she counseled E.K. and L.K. separately for ten sessions each. Foss said that during a session E.K. told her that Appellant advised her not to tell anyone what he was doing to her, because "I'm your dad and I can do whatever I want. It's my house and my kids." Foss testified regarding the drawings made by E.K. and L.K. and that the drawings pertained to the alleged touching by Appellant. Foss corroborated the other testimony regarding what E.K. and L.K. had said happened between them and Appellant.
 {¶ 75} Donna Abbott, a pediatric nurse, testified that she examined both E.K. and L.K, and, whereas by the time of the examination, there were no physical indicators of sexual penetration, the absence of indicators was not conclusive evidence that no penetration occurred.
 {¶ 76} Charel Kohl, a psychologist with the Child Guidance Center, testified that E.K. and L.K. both displayed problematic behaviors consistent with behaviors exhibited by sexually abused children. Kohl also stated that, while she did not ask questions pertaining to the molestation, L.K. volunteered that Appellant inappropriately touched her, that Appellant threatened her, and that she was afraid of Appellant.
 {¶ 77} E.K. and L.K.'s mother, Terry, testified that she observed red physical marks on L.K.'s groin area after L.K. complained of pain. Terry claimed she asked L.K. if Appellant had done something to her, and L.K. responded, "Not this time." Terry testified that once E.K. and L.K. were removed from the home, she telephoned Appellant to so advise him. Terry further stated that when she arrived home, she discovered that Appellant had shaved off his mustache and had apparently fled the home.
 {¶ 78} Ruth Newman, a counselor at the Child Guideance Center, testified that while counseling L.K., L.K. told her that L.K. had a "secret" rash obtained as a result of Appellant's touching her with his fingers and his hand. Newman also testified to L.K.'s problematic behaviors, which are indicative of sexual molestation.
 {¶ 79} Finally, Sherry Robinson, a police detective, testified that during the course of her investigation of this case, she was able to ascertain the same reports of molestation that E.K. and L.K. had told to the other testifying witnesses.
 {¶ 80} Appellant was the sole defense witness called, and his testimony was a basic denial of the other testimony and puzzlement over why the testimony was given. Appellant also testified that he changed his appearance and left the state due to fear. Appellant stated that his wife had ulterior motives for these charges in that she was involved with other men. Appellant further alleged his wife had hid his immigration and identity papers from him, making it necessary, once he fled, to buy false papers under another name in order to obtain employment. Further, he testified regarding his immigration arrest in Texas, and how he had called his wife occasionally in an attempt to convince her to drop these charges.
 {¶ 81} Upon review of the entire record, the weight of the evidence, all reasonable inferences, and the credibility of the witnesses, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's fifth assignment of error is overruled.
 III. {¶ 82} Appellant's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
WHITMORE, J., BATCHELDER, J. CONCUR.